UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

TITUS ARON-EL,                        )
                                      )
              Plaintiff,              )
                                      )
       v.                             )        No. 2:22-cv-00383-JPH-MG
                                      )
S. TIERNEY C.O.,                      )
                                      )
              Defendant.              )

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Titus Aron-El pursues an Eighth Amendment excessive force claim against Officer S. Tierney pursuant to 28 U.S.C. § 1983 for his use of oleoresin capsicum aerosol streamer ("OC spray") on Mr. Aron-El in a shower at Wabash Valley Correctional Facility ("Wabash Valley"). Officer Tierney has moved for summary judgment. Dkt. 71. Because no reasonable jury could find that Officer Tierney failed to act in good faith to maintain order, that motion is **GRANTED**.

**I.**
**Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility

1

determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Officer Tierney has moved for summary judgment under Fed. R. Civ. P. 56(a), the Court views and recites the evidence in the light most favorable to Mr. Aron-El and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572-73.

### A. Relevant Policies

Under Indiana Department of Correction ("IDOC") policy, "[w]hen an offender continues to passively resist/refuse to comply (move) after all appropriate verbal interventions have been exhausted[,]" a correctional officer may use force. Dkt. 70-1 at 8. An inmate's refusal to submit to restraints so that he may be removed from the shower is considered passive resistance under the policy. Dkt. 71-7 at ¶ 31.

IDOC policy defines a ten-step continuum of force for officers to respond to inmate behavior, with OC spray as one of the intermediate steps. Dkt. 70-1 at 8-11. Some of the steps, such as the cell extraction team, do not apply in some situations, such as when the inmate is not in his cell. *See* dkt. 71-7 at ¶ 34. Officers may enter the continuum of force at any step believed reasonable and necessary under the policy. Dkt. 70-1 at 8-11. Wabash Valley staff are trained that OC spray, like other use-of-force tools, is "to be used after reasonable measures to maintain control, custody, and security have been exhausted and the staff person reasonably believes its use is necessary." Dkt. 70-1 at 7. Officer Tierney was trained on use of OC spray according to IDOC policy. Dkt. 71-7 at ¶ 38.

Wabash Valley officers are trained in accordance with policy to deploy OC spray at the "target area," or an inmate's eyes and face, for about one second. Dkt. 71-7 at ¶ 38. OC spray does not deploy in a straight line and may be used at awkward angles in certain situations, and inmates often contort their bodies to avoid being hit by OC spray. *Id.* at ¶ 39. OC spray is therefore often sprayed

for longer than one second "so that the Correctional Officer has the opportunity to get the OC Spray on target." *Id.*

### B. Mr. Aron-El's January 20, 2021 Shower

On January 20, 2021, Mr. Aron-El was incarcerated in the B-West housing unit of the secure confinement unit of Wabash Valley. Dkt. 71-5 at 5-6, 17 (dep. at 4-5, 16); *see* dkt. 71-7 at ¶ 5. The B-West unit ran showers and recreation every other day, allowing an inmate to spend time at recreation, take a shower, or a combination thereof. Dkt. 71-7 at ¶¶ 11, 15. Wabash Valley generally permitted inmates twenty minutes to shower on days they elected to shower. *Id.* at ¶ 17. Circumstances such as the day's schedule and the quantity of inmates requesting a shower may cause Wabash Valley staff to permit inmates to shower for longer than twenty minutes. *Id.* When an inmate is ordered to submit to restraints and leave the shower, he must comply. *Id.*

On January 20, 2021, there was only one shower running in Mr. Aron-El's range. *Id.* at ¶ 18. Therefore, some inmates who requested showers were brought to showers elsewhere, increasing the time and distance required for officers to transport inmates to those showers elsewhere. *Id.* This caused the day's shower and recreation schedule for B-West unit to be tighter than usual. *Id.*

Mr. Aron-El was escorted to the shower in the B-West unit by Officer Tierney and another officer. *See generally* dkt. 73 (video). Officer Tierney had closed the shower door and removed Mr. Aron-El's restraints at 12:48 p.m., and Mr. Aron-El began his shower. *Id.* at 12:48:35 PM. The shower door was

perforated so that it could be seen through both ways, and had a handcuff port. *See generally* dkt. 73.

Officer Tierney and the other officer passed the shower at 1:48 p.m. and spoke to Mr. Aron-El. Dkt. 73 at 1:48:35-1:48:41 p.m. They asked if he was done with his shower and he responded that he was not. Dkt. 71-5 at 47 (dep. at 46).[1] At 1:56 p.m., Officer Tierney passed the shower and told Mr. Aron-El to "[h]urry the fuck up[.]" Dkt. 71-5 at 48 (dep. at 47); *see* dkt. 73 at 1:56:42-1:56:45 PM. At 2:00 p.m., Officer Tierney again spoke with Mr. Aron-El. Dkt. 73 at 2:00:3-2:00:43 PM. Officer Tierney threatened to mace him if he did not prepare to exit the shower and called him racist slurs. Dkt. 71-5 at 51 (dep. at 50). At 2:01 p.m., Officer Tierney spoke with Mr. Aron-El again. Dkt. 73 at 2:01:30-2:01:50 PM. Officer Tierney said that if he did not get out of the shower, Officer Tierney was going to turn the water off and mace him. Dkt. 71-5 at 53 (dep. at 52).

The officers turned off the water. Dkt 71-10 at ¶ 38. At 2:05 p.m., the officers approached the shower door; Officer Tierney was holding the lead strap and stood away from the door, behind the other officer. Dkt. 73 at 2:05:13-2:05:28 PM. Mr. Aron-El was drying off and said that he felt he was being rushed and that he did not want to be handcuffed. Dkts. 71-5 at 56 (dep. at 55), 71-10 at ¶ 38. Officer Jobe tried to calm Mr. Aron-El down, ordered him to submit to restraints for escort, and warned that force including OC spray may

---

[1] Officer Tierney designates evidence that he and the other officer warned Mr. Aron-El that he had exceeded his allotted shower time and that he needed to hurry up so he could be removed. Dkt. 71-10 at ¶ 34.

be required. Dkt. 71-10 at ¶ 38. Mr. Aron-El asked to speak to a sergeant and feared for his life because Officer Tierney had threatened him with mace twice. Dkt. 71-5 at 56 (dep. at 55).

**D. Use of Force**

Officer Tierney stepped up to the shower door holding the lead strap and handcuffs in his left hand and the OC spray in his right hand. Dkt. 73 at 2:05:50-2:05:56 p.m. Officer Jobe again ordered Mr. Aron-El to submit to restraints. Dkt. 71-10 at ¶ 39. Mr. Aron-El again requested to speak to a sergeant because he feared for his life. Dkt. 71-5 at 57 (56). At 2:06 p.m., Officer Jobe told Mr. Aron-El again to submit to restraints, motioning toward the OC spray that Officer Tierney was holding. Dkts. 71-10 at ¶ 40, 73 at 2:06:08-2:06:21 p.m. Because the door was perforated, Mr. Aron-El could see the OC spray. Dkt. 71-5 at 61 (dep. at 60). Officer Jobe said, "Dude, this is not what you want! Just get out of the shower[.]" *Id.* at 60-61 (dep. at 59-60).  Mr. Aron-El responded, "I am not refusing to get out of the shower[.] I just don't trust my life with Tierney[ ] because he threaten[ed] me twice, and I haven't did nor said anything disrespect[ful] to that guy. So I'll leave when I feel safe around a sergeant." *Id.* at 61 (dep. at 60). During this exchange, Officer Tierney told Mr. Aron-El to submit to the restraints, said his shower time was over, and used expletives in communicating this. *Id.* at 61-62 (dep. at 60-61).

Officer Tierney issued a final verbal order to Mr. Aron-El to submit to the restraints or else he would deploy OC spray. *Id.* at ¶ 41. The other officer stepped away from the door at Officer Tierney's request. Dkts. 73 at 2:06:20-

6

2:06:26 p.m.; 88-1 at 2. Mr. Aron-El was asking the other officer to call the sergeant, dkt. 71-5 at 77 (dep. at 76), and, at 2:06:26.407 p.m., Officer Tierney inserted his right hand, holding the OC spray, into the handcuff port. Dkt. 73 at 2:06:26 p.m. He removed his hand at 2:06:32.007 p.m., 5.6 seconds later. *Id.* at 2:06:32 p.m. Officer Tierney deployed OC spray. Dkt. 71-5 at 62 (dep. at 61).

Officer Tierney had to aim the OC spray at an awkward angle through the handcuff port. Dkt. 71-9 at ¶ 10. Mr. Aron-El attempted to avoid the OC spray, and Officer Tierney did not hit the "target area"—"an area of [Mr. Aron-El's] body including his eyes and face"—with the OC spray immediately. *Id.* at ¶ 7, 10. The OC spray initially hit Mr. Aron-El's genital area, which was at the same height as the handcuff port. Dkt. 71-5 at 62 (dep. at 61). Officer Tierney tilted the OC spray cannister so that the spray continuously deployed up Mr. Aron-El's body to his face and hair. *Id.* at 62-63 (dep. at 61-62). Officer Tierney directed the spray to the "target area" as quickly as he could manage, and stopped the spray when the "target area" had been sprayed for one second. Dkt. 71-9 at ¶ 10. The OC spray was deployed for, at most, 5.6 seconds. Dkt. 73 at 2:06:26 -2:06:32.007 p.m.

Officer Tierney radioed his chain of command at 2:07 p.m. Dkts. 71-9 at ¶ 16, 73 at 2:07:13-2:07:16 PM. The sergeant arrived, the shower water was turned back on for Mr. Aron-El to decontaminate, and the OC spray administrative warning—providing information on proper cleaning—was read to Mr. Aron-El. Dkts. 71-8 at ¶ 8, 11-13, 73 at 2:08:07-2:13:49 PM. Mr. Aron-El

7

completed the decontamination shower, was brought new clothes, submitted to restraints, and was escorted back to his cell. Dkt. 71-5 at 28-29 (27-28). A nurse came and provided him advice on recovery from the OC spray. *Id.* at 29 (28).

Officer Tierney drafted a Report of Conduct recounting the events of his use of force. Dkt. 71-1 at 2. Mr. Aron-El was found guilty of refusing an order at a disciplinary hearing and was issued a written reprimand. *Id.* at 1.

### III.
### Discussion

Officer Tierney moves for summary judgment on the merits of Mr. Aron-El's Eighth Amendment excessive force claim and based on the affirmative defense of qualified immunity. The Court exercises its discretion to begin with the merits of whether there was a constitutional violation. *See Leiser v. Kloth,* 933 F.3d 696, 701 (7th Cir. 2019).

### A. Applicable Law

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White,* 933 F.3d 651, 662 (7th Cir. 2019). A use of force is permissible if used "in a good-faith effort to maintain or restore discipline." *McCottrell,* 933 F.3d at 664 (cleaned up). But malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good-faith and malicious force, courts consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3)

8

the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986). To survive summary judgment under these "*Whitley* factors," a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322.

It is not cruel and unusual punishment to use "mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). A prison officer may use small amounts of pepper spray to compel a disobedient prisoner to leave a cell. *Id.*; *see also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 668 (7th Cir. 2012) (where prisoner had hit his cellmate and refused to comply with order to leave cell, use of pepper spray was justifiable). But "it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Soto*, 744 F.2d at 1270.

The summary judgment record contains video of the incident. "[W]here a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that no reasonable jury could credit that party's story, a court should not adopt that party's version of the facts for the

9

purpose of ruling on a motion for summary judgment." *McCottrell*, 933 F.3d at 661 n.9 (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

### B. Application

#### 1. Need for the Application of Force

The video shows that Mr. Aron-El was in the shower without restraints starting at 12:48 p.m. While the video on the record does not run continuously from 12:48 p.m. to 1:48 p.m., Mr. Aron-El does not dispute that the first warning he received came one hour into his shower at 1:48 p.m. *Id.* at 1:48:35-1:48:41 p.m. Officers warned Mr. Aron-El that he had exceeded his allotted shower time. *See* dkt. 71-7 at 17. Mr. Aron-El received three more warnings between 1:56 p.m. and 2:05 p.m.

While the parties dispute the specifics and tenor of Officer Tierney's warnings, it is undisputed in the designated evidence that Mr. Aron-El's time in the shower was complete, and he was told to prepare to exit the shower and submit to restraints or face force in order to achieve compliance. At 2:05 p.m., both officers on duty approached the shower and again warned Mr. Aron-El to comply with their orders and submit to restraints. *See, e.g.*, dkts. 71-10 at ¶ 40, 73 at 2:06:08-2:06:21 PM. They clearly communicated that the consequence of Mr. Aron-El's failure to comply would be use of OC spray; Officer Tierney indicated this multiple times and held an OC spray canister which the other officer motioned to. Dkts. 71-10 at ¶ 40, 73 at 2:06:08-2:06:21 PM.

Nevertheless, Mr. Aron-El testified: "I am not refusing to get out of the shower[.] I just don't trust my life with Tierney[ ] because he threaten[ed] me

10

twice, and I haven't did nor said anything disrespect[ful] to that guy. So I'll leave when I feel safe around a sergeant." Dkt. 71-5 at 61 (dep. at 60). But his request for a sergeant did not allow him to refuse to comply or require Officer Tierney, or any officer, to summon a sergeant in response to Mr. Aron-El's passive resistance before using OC Spray. Dkt. 71-10 at ¶ 28. Instead, "inmates may not pick and choose which orders to obey." *Smith v. Kind*, 140 F.4th 359, 368 (7th Cir. 2025). "When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger." *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009).

Mr. Aron-El nevertheless contends that the officers' orders were not proper, amounted to threats, and caused him fear. Yet, correctional staff are generally entitled to threaten and then use force to obtain compliance with orders, *see Soto*, 744 F.2d at 1267, and Officer Tierney's threats of using OC spray were in line with his orders for Mr. Aron-El to submit to restraints for escort back to his cell. Mr. Aron-El was passively resisting orders. He had been in the shower for more than one hour on a day where only one shower was available in his unit. The "need for the application of force" *Whitley* factor therefore weighs in favor of finding that Officer Tierney's use of force was done in good faith and was not malicious.

### 2. Relationship Between Need and Amount of Force Used

The relationship between the need for and circumstances around the force and the amount of force used also suggests that Officer Tierney's use of force

was in good faith. Officer Tierney used, at most, a 5.6-second burst of OC spray, stopping with one second of spray on the "target area." No reasonable jury could find that this amount of force was unreasonable in addressing the need to remove Mr. Aron-El from the shower after more than one hour and multiple warnings. *See generally Jackson v. Angus*, 808 Fed. App'x 378, 380 (7th Cir. 2020) (summary judgment granted when officer used two short bursts of pepper spray); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 668 (7th Cir. 2012) (where prisoner hit his cellmate and refused to comply with order to leave cell, use of OC spray was justifiable); *Kervin v. Barnes*, 144 Fed. App'x 551, 552 (7th Cir. 2005) (claim dismissed at screening when officer used one-second burst of pepper spray).

Moreover, it is undisputed in the designated evidence that Officer Tierney attempted lesser uses of force under IDOC policy—including demonstrating his physical presence and repeatedly warning Mr. Aron-El that force would be used if he did not comply. Dkt. 70-1 at 8-11. And the other less-forceful alternatives in the policy, weaponless physical contact techniques and the cell extraction team, were not available options because Mr. Aron-El was refusing an order to submit to restraints in the shower. Officer Tierney therefore followed IDOC policy in using OC spray.

Officer Tierney designates evidence that, upon deploying the spray to Mr. Aron-El's face for one second as trained, he stopped spraying, and Mr. Aron-El designates no evidence to place that in dispute. Dkt. 71-9 at ¶ 10. It is similarly undisputed in the designated evidence that spraying through the handcuff port

12

was an awkward angle to deploy OC spray, which already does not spray in a straight line. Indeed, Mr. Aron-El testified that Officer Tierney had to adjust his aim upward towards his face to reach the target area. Dkt. 71-5 at 62 (dep. at 61). Eventually, Mr. Aron-El was sprayed in the face for one second. Dkt. 71-9 at ¶ 10.

This *Whitley* factor therefore also weighs in favor of finding that Officer Tierney's use of force was done in good faith and was not malicious.

### 3. Extent of Injury Inflicted

While OC spray struck Mr. Aron-El's genitals, chest, and face, causing pain, dkt. 71-5 at 63 (dep. at 62); 29 (dep. at 28), he was promptly allowed a decontamination shower, advised on proper cleaning, and seen by a nurse. Moreover, he designates no evidence of any long-term injuries. Given the lack of long-term injury, the extent of injury factor also weighs in Officer Tierney's favor. *See Marshall v. Andis*, No. 1:23-cv-00781-JPH-MJ, 2025 WL 713553, at *3 (S.D. Ind. Mar. 5, 2025) ("When an inmate is promptly given the opportunity to wash off OC spray, exposure to OC spray ordinarily does not give rise to a risk of serious medical issues." (citations omitted)).

The "extent of injury" *Whitley* factor thus weighs in favor of finding that Officer Tierney's use of force was in good faith and was not malicious.

### 4. Extent of Threat to Safety of Staff and Inmates

Mr. Aron-El's refusal to comply with repeated commands long after his shower time expired is the type of "refusal and denial of authority [that] places the staff and other inmates in danger." *Lewis*, 581 F.3d at 476 (7th Cir. 2009).

This is because prisons are dangerous places and "maintaining institutional security and preserving internal order and discipline are essential goals[.]" *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). So, while the threat of Mr. Aron-El remaining in the shower despite orders did not put any officer or inmate in immediate physical danger, it was a threat to institutional order, so this *Whitley* factor weighs in favor of finding that Officer Tierney's use of force was in good faith and was not malicious.

### 5. Efforts Made to Temper the Severity of a Forceful Response

Finally, Officer Tierney and the other officer repeatedly told Mr. Aron-El that they would use OC spray if he did not comply with their commands to cuff-up and get out of the shower. The officers' conduct complied with IDOC's use of force policy. Accordingly, this *Whitley* factor supports a finding that Officer Tierney's actions were in good faith and were not malicious.

\*    \*    \*

In sum, under the designated evidence applied to the *Whitley* factors, no reasonable jury could find that Officer Tierney's use of force was not a good-faith effort to maintain order. Because a reasonable jury could not find an Eighth Amendment violation, Officer Tierney's motion for summary judgment, dkt. 71, is **GRANTED**.

### IV.
### Conclusion

Officer Tierney's motion for summary judgment, dkt. [71], is **GRANTED**.

14

**Final judgment** will enter consistent with this Order and the Court's

May 22, 2023, Screening Order, dkt. 10.

**SO ORDERED.**

Date: 6/30/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

TITUS ARON-EL
999144
INDIANA STATE PRISON
INDIANA STATE PRISON
Electronic Service Participant – Court Only

All Electronically Registered Counsel